UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAMJET AVIATION, INC. | ) | CASE NO. |
| 1100 Lee Wagner Blvd., Suite 320 | ) | |
| Fort Lauderdale, FL 33315 | ) | JUDGE |
| | ) | |
| and | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| SKYWAYS CHARTER, LLC | ) | VIOLATION OF RICO |
| 3700 Airport Road, Suite 302 | ) | (18 U.S.C. § 1962(c) and (d)) |
| Boca Raton, FL 33487 | ) | FRAUD |
| | ) | CONSPIRACY TO DEFRAUD |
| and | ) | BREACH OF CONTRACT |
| | ) | UNJUST ENRICHMENT |
| HT AVIATION CORPORATION | ) | |
| 4704 N. Harper Road | ) | |
| Corinth, MS 38834 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MY PARTS LOCATOR, INC. | ) | |
| 4350 New Road, Unit B | ) | |
| Austintown, Ohio 44515 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHELLE MOORE | ) | |
| a/k/a Michelle Firman | ) | |
| 4427 Nantucket Drive | ) | |
| Austintown, Ohio, 44515 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CODY MOORE | ) | |
| 874 Compass West Drive | ) | |
| Austintown, Ohio 44515 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| YVETTE PEREZ | ) | |
| 4376 Mahoning Ave, Apt. 1 | ) | |
| Austintown, Ohio 44515 | ) | |

)
Defendants.                                          )

Plaintiffs Ramjet Aviation, Inc., Skyways Charter, LLC, and HT Aviation Corporation for their complaint against Defendant My Parts Locator, Inc., Michelle Moore (aka Michelle Firman), Cody Moore, and Yvette Perez allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Ramjet Aviation, Inc. ("Ramjet") is a corporation organized and existing under the laws of the State of Florida with a principal place of business in Florida.

2.      Plaintiff Skyways Charter, LLC ("Skyways") is a limited liability company organized under the laws of the State of Delaware. Skyways has a single member that is a limited liability company comprised of four individual members, all of whom are citizens of the State of Florida.

3.      Plaintiff HT Aviation Corporation ("HT Aviation") (collectively with Ramjet and Skyways, the "Plaintiffs") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Mississippi.

4.      Defendant My Parts Locator, Inc. ("MPL") is a corporation organized and existing under the laws of the State of Ohio with a principal place of business located in Austintown, Ohio.

5.      Defendant Michelle Firman ("Firman") is an individual citizen of the State of Ohio who resides in Mahoning County. Upon information and belief, Firman's legal name is Michelle Moore.

6.      Defendant Cody Moore ("Moore") is an individual citizen of the State of Ohio who resides in Mahoning County.

7.      Defendant Yvette Perez ("Perez") is an individual citizen of the State of Ohio who resides in Mahoning County. MPL, Firman, Moore, and Perez are collectively referenced as "Defendants."

2

8.     This Court has subject matter jurisdiction over the federal claims asserted here under 18 U.S.C. § 1964, 12 U.S.C. § 2614, 15 U.S.C. § 1650, and 28 U.S.C. § 1331. Jurisdiction over Plaintiffs' state law claims here rest on principles of ancillary and pendant jurisdiction.

9.     This Court also has subject matter jurisdiction over the state law claims asserted here pursuant to 28 U.S.C. § 1332 inasmuch as all Plaintiffs are citizens of states different from the Defendants and the amount in controversy exceeds the sum of $75,000.

10.    This Court has general personal jurisdiction over Defendants as all of the Defendants are citizens of the State of Ohio inasmuch as MPL is incorporated and maintains its principal place of business in Ohio and Firman, Moore, and Perez are all citizens of the State of Ohio.

11.    Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in this judicial district and Defendants conducted a substantial part of the events and omissions giving rise to this action in this judicial district.

## FACTUAL ALLEGATIONS

12.    MPL, through its website mypartslocator.com, holds itself out as an "aircraft parts distributor" and advertises itself as specializing in sourcing otherwise difficult to obtain parts from various aircraft manufacturers including Cessna, Twin Commander, Hawker Beechcraft, Honeywell, and others.

13.    MPL also advertises that it uses an inventory tracking system that allows its employees to determine whether a particular component part is in stock, the price and condition of the part, and whether the part is available to be shipped.

14.    Firman holds herself out as the "CEO" of MPL, and upon information and belief, is a shareholder, officer, or director of MPL.

15.     Moore holds himself out as an officer of MPL, and upon information and belief, is a shareholder, officer, or director of MPL.

16.     Perez holds herself out as a "Part Specialist" for MPL, but upon information and belief, is a shareholder, officer, or director of MPL or otherwise derives a direct and substantial benefit from the fraudulent operation of MPL.

**Ramjet**

17.     On or about April 5, 2022, Ramjet's agent, Jeff Ramsden, contacted MPL regarding Ramjet's possible purchase of a Hawker 800 R/H Windshield bearing Part Number NF24016-416. Mr. Ramsden spoke with directly with Perez regarding Ramjet's possible purchase of the windshield.

18.     Following their discussion, Perez emailed Mr. Ramsden a quote for Part Number NF24016-416 quoting a price of $30,000 and represented to Mr. Ramsden, in bold typeface, that the part was "Available to ship once payment is received."

19.     In response, Mr. Ramsden requested confirmation that the part is "physically at your facility ready to ship" and that the part would be accompanied by the necessary form 8130 for FAA certification.

20.     Perez responded to Mr. Ramsden with a picture of the part intended as confirmation that the part was at MPL's facility and ready to ship with the form 8130 attached.

21.     That same day, Perez also issued an invoice, invoice 1839, to Ramjet for the total amount of $33,419.00, reflecting the purchase price for the windshield, the costs for shipping via FedEx, and applicable taxes. A true and accurate copy of that invoice is attached here as Exhibit 1.

22.     As reflected in that invoice, MPL represented that there would be a 1-2 day lead time for wire transfers and a $25.00 fee for the same.

23.     Thereafter, on or about April 6, 2022, in reliance on Perez's representations that the part was in stock, accompanied by the form 8130, and ready to ship, Ramjet wired MPL the sum of $33,444.00, consisting of the purchase price for the windshield, shipping costs, applicable taxes, and wire transfer fee.

24.     Mr. Ramsden informed Perez of that wire transfer confirmation the same day and requested that Perez send confirmation once MPL received the funds and confirmation with the tracking information for the package once shipped.

25.     Perez responded that same day indicating that MPL would provide the requested information once it received the wire transfer.

26.     On April 8, 2022, Perez confirmed receipt of the wire transfer.

27.     Thereafter, for the next several days, Perez repeatedly promised to provide tracking information once obtained, but made repeated excuses why the parts were not shipped on April 8, 2022 or the tracking information could not readily be obtained for the same.

28.     Finally, on April 13, 2022, Perez emailed Mr. Ramsden tracking information, but upon Mr. Ramsden's access of the link, he discovered that the product shipped was (a) significantly less in weight than the windshield that Ramjet had ordered and (b) sent via air, as opposed to freight, as a significantly lesser cost than the $1,500 charged for shipping.

29.     Accordingly, on April 14, 2022, Mr. Ramsden demanded a refund of Ramjet's payment if accurate shipping information was not provided.

30.     Thereafter, on April 15, 2022, Ramjet received the "product," and discovered that the product shipped was not Part No. NF24016-416 and was not the part contained in Perez's picture. Rather, the product received was a windshield from a completely different aircraft, bearing a

completely different part number (35-410291-11), and was not accompanied by any paperwork other than an invoice.

31.     Accordingly, Mr. Ramsden again contacted Perez, demanding a refund and shipping information for return of the rejected windshield.

32.     Perez responded and attempted to cast blame on an unidentified vendor—despite her prior representations that the part was in MPL's possession and ready to ship—and promising a return of the payment once the "vendor" returned the money back to MPL.

33.     As of the filing of this lawsuit, Ramjet has not received any portion of the refund for the payment of $33,444.00 that it made to MPL.

34.     Ultimately, Ramjet had to obtain a replacement for the windshield at significantly greater cost and expense than the amount agreed upon with MPL.

35.     At all times relevant to this suit, Perez and Firman, who were both involved in the written communications with Ramjet, knew that the representations made to Mr. Ramsden were false, knew that MPL did not possess the windshield, could not readily obtain the windshield, did not intend to ever ship Ramjet the windshield, and did not intend to ever refund Ramjet's wire transfer.

36.     Instead, Perez and Firman perpetuated these knowingly and intentionally false representations for the sole purpose of inducing Ramjet to wire the funds to MPL in order to defraud Ramjet of its property.

## Skyways

37.     On or about April 7, 2022, Skyway's agent, Rudy Mavila, contacted MPL regarding Skyway's possible purchase of the same Hawker 800 R/H Windshield bearing Part Number NF24016-416 that Ramjet had inquired of the prior day. Mr. Mavila also spoke with Perez.

6

38.     Following that discussion, Perez emailed Mr. Mavila, copying Firman, a quote for Part Number NF24016-416 quoting a purchase price of $34,500 and represented to Mr. Mavila, in bold typeface, that the part was "Available to ship today."

39.     Perez also represented to Mr. Mavila that the part was "New with 8130," referring to the necessary form 8130 for FAA certification.

40.     After negotiation as to price, Perez informed Mr. Mavila that MPL agreed to accept the sum of $30,000.00 for the windshield and Mr. Mavila provided a purchase order as requested.

41.     That same day, Perez issued an invoice, invoice 1840, for the total amount of $30,000, reflecting the purchase price for the windshield. A true and accurate copy of that invoice is attached here as Exhibit 2.

42.     As reflected in that invoice, MPL represented that there would be a 1-2 day lead time for wire transfers and a $25.00 fee for the same.

43.     Thereafter, in reliance on Perez's representations that the part was in stock and ready to ship, Skyways wired MPL the sum of $30,000.

44.     Between April 11 and April 12, Mr. Mavila repeatedly requested shipping information for the windshield but was not provided that information until April 13, 2022.

45.     On or about April 12, 2022, however, Perez did email Mr. Mavila a purported picture of the windshield in an attempt to corroborate her prior representations that the part was in stock.

46.     Thereafter, on April 15, 2022, Skyways received the "windshield," but like Ramjet, discovered that the product shipped was not Part No. NF24016-416 and was not the part contained in Perez's photograph. It was, again, a different windshield bearing Part No. 35-410291-11 (the same type of windshield contemporaneously shipped to Ramjet). And, again, the windshield lacked the appropriate paperwork.

47.     Accordingly, Mr. Mavila informed Perez that the part was not an appropriate substitute and requested shipping instructions for return.

48.     In response, Firman informed Mr. Mavila that MPL would fix the issue for them and thereafter promised that Skyways would receive a refund once the money was received back from MPL's undisclosed "vendor."

49.     As of the filing of this lawsuit, Skyways has not received any portion of the refund for the payment of $30,000 that it made to MPL.

50.     Ultimately, Skyways had to obtain a replacement part for the windshield at a significantly greater cost than the amount agreed upon with MPL and incurred significant consequential losses due to the delay in restoring its aircraft to working condition.

51.     At all times relevant to this suit, Perez and Firman, who were both involved in the written communications with Skyways, knew that the representations made to Mr. Mavila were false, knew that MPL did not possess the windshield, could not readily obtain the windshield, did not intend to ever ship Skyways the windshield, and did not intend to ever refund Skyway's wire transfer.

52.     Instead, Perez and Firman perpetuated these knowingly and intentionally false representations for the sole purpose of inducing Skyways to wire the funds to MPL in order to defraud Skyways of its property.

**HT Aviation**

53.     On or about February 17, 2022, HT Aviation's agent, Gary Peoples, contacted MPL regarding HT Aviation's purchase of a Raytheon Aircraft Services Piston Assembly bearing Part Number 390-820016-0011 and Hawker 200 Outer Cylinder Assembly bearing Part Number 390-820115-0017. Mr. Peoples also spoke with Perez.

54.     Following that discussion, Perez emailed Mr. Peoples, copying Firman, a quote for Part Numbers 390-820016-0011 and 820115-0017 quoting a purchase price of $19,676.00 and $27,819.00 respectively. Perez also represented to Mr. Peoples that the parts were "New with 8130," and represented, in bold typeface, that the parts were "Available to ship today."

55.     That same day, Mr. Peoples responded with a purchase order and requested wiring instructions to pay for the parts.

56.     Perez issued an invoice, invoice 1817, for the total amount of $50,844.65 reflecting the purchase price for the parts, a wire transfer fee in the amount of $25.00, and applicable taxes. A true and accurate copy of that invoice is attached here as Exhibit 3.

57.     Thereafter, in reliance on Perez's representations that the parts were in stock and ready to ship, HT Aviation wired MPL the sum of $50,844.65 consisting of the purchase price for the parts, applicable taxes, and wire transfer fee.

58.     As of February 23, 2022, however, HT Aviation had not received delivery of the parts and began to inquire as to the status of the parts.

59.     In response, Firman contacted Mr. Peoples directly, referenced a discussion with a "local police department trying to confirm if we are a legitimate company," assured Mr. Peoples that MPL was a legitimate company, and provided excuses as to why their office had not processed the shipping information to send the parts.

60.     After further requests for updates, Moore directly contacted both Mr. Peoples and HT Aviation's principal by email and telephone to again represent that MPL was going to honor the order and ship the parts and was working on obtaining a tracking number for the shipment.

61.     On or about March 1, 2022, having not received its parts, HT Aviation demanded a refund of its money, prompting Moore to reverse course and attempt to explain that these parts had

a two-week "lead time" despite Perez's written representation that the parts were in stock and ready to ship.

62.     After Mr. Peoples brought that representation to Moore's attention, Perez continued to represent that Moore would call Mr. Peoples to discuss, but MPL did not deliver the parts and did not refund HT Aviation's funds.

63.     As of the filing of this lawsuit, HT Aviation has not received delivery of the parts and has not been refunded any portion of the $50,844.65 paid to MPL.

64.     Ultimately, HT Aviation was not able to find all of the substitute parts and instead had to procure a complete replacement unit, at a significantly greater cost than the amount agreed upon with MPL and incurred significant consequential losses due to the delay in restoring its aircraft to working condition.

65.     At all times relevant to this suit, Perez, Firman, and Moore knew that the representations made to HT Aviation were false, knew that MPL did not possess the parts, could not readily obtain the parts, did not intend to ever ship the parts to HT Aviation, and did not intend to ever refund HT Aviation's wire transfer.

66.     Instead, Perez, Firman, and Moore perpetuated these knowingly and intentionally false representations for the sole purpose of inducing HT Aviation to wire the funds to MPL in order to defraud HT Aviation of its property.

### COUNT I – RICO
### (18 U.S.C. § 1962(c))
### (All Plaintiffs Against Firman, Moore and Perez)

67.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 66 of this Complaint as if fully rewritten here.

68. Plaintiffs bring this claim under 18 U.S.C. § 1962(c) pursuant to 18 U.S.C. § 1964 against Firman, Moore, and Perez.

69. Firman, Moore, and Perez are "persons" as defined in 18 U.S.C. § 1961(3).

70. MPL is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

71. Firman, Moore, and Perez conducted and controlled the affairs of MPL through a pattern of racketeering activity, and participated in the management and control of the enterprise.

72. The pattern of racketeering activity through which Firman, Moore, and Perez conducted the affairs of the enterprise consisted of multiple violations of the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Firman, Moore, and Perez induced numerous instances of the use of the U.S. wires to further the scheme, and the acquisition of funds by MPL in the course of this scheme affected interstate commerce.

73. As a direct and proximate result of Firman, Moore, and Perez's violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property.

### COUNT II – RICO
**(18 U.S.C. § 1962(d))**
**(All Plaintiffs Against Firman, Moore and Perez)**

74. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 73 of this Complaint as if fully rewritten here.

75. Plaintiffs bring this claim under 18 U.S.C. § 1962(d) against Defendants Firman, Moore, and Perez. These defendants entered into a concert of action in violation of 18 U.S.C. § 1962(d). The purpose and effect of this combination was to devise and implement and further the fraudulent scheme, described above, through systematic false statements and representations.

76. The aforesaid combination in violation of 18 U.S.C. § 1962(d) in which these defendants engaged was perpetrated by them through a pattern of racketeering activity.

77.     As a direct and proximate result of these defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property.

**COUNT III – FRAUD**
**(All Plaintiffs Against All Defendants)**

78.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 77 of this Complaint as if fully rewritten here.

79.     Defendants, individually, collectively, and as agents of MPL, made repeated representations to each of the Plaintiffs, directly and indirectly, orally and in writing, concerning the availability of the parts requested by each of the Plaintiffs and of MPL's ability to immediately and timely ship the same upon receipt of full payment for the respective parts.

80.     Defendants knew at the time they made these representations that they were false, knew that the parts were not available or could not be readily acquired to be made available, and could not immediately and timely be shipped to the Plaintiffs upon receipt of full payment for the same.

81.     Defendants, individually, collectively, and as agents of MPL, also made repeated representations to each of the Plaintiffs, directly and indirectly, orally and/or in writing, that MPL intended to ship the parts, intended to perform the parties' contemplated transactions and honor its obligations, and when the parts were not forthcoming, that MPL intended to provide each of the Plaintiffs a full refund of the amounts paid for purchase of the parts.

82.     Defendants knew at the time they made these representations that they were false and had no intention of shipping the actual parts to any of the Plaintiffs, had no intention of performing the obligations required of MPL under the contemplated transactions, and have never had any intention of providing a refund to any of the Plaintiffs for the amounts paid.

83.     Defendants, individually, collectively, and as agents of MPL, thereafter took action to conceal the falsity of their representations, including, among other things, providing false tracking information, intentionally shipping erroneous parts, blaming nonexistent and previously unmentioned vendors, and promising, but refusing to process, a refund of the amounts paid.

84.     Defendants made these representations for the specific purpose of inducing each of the Plaintiffs to pay MPL significant sums of money that Defendants intended to wrongfully and unlawfully retain without providing the requested parts in return.

85.     Each of the Plaintiffs reasonably and justifiably relied on these false representations and wired significant sums of money to MPL for aircraft parts and components that MPL did not deliver.

86.     As a direct and proximate result of Defendants' misconduct, each of the Plaintiffs have suffered damages in an amount in excess of $50,000 with the exact amount to be proven at trial.

87.     Defendants' above-described conduct was fraudulent, committed intentionally and willfully, and was performed with malice towards the Plaintiffs and displays a pattern of such intentional and malicious conduct designed to induce Plaintiffs (and presumably many others) to remit significant sums of money to MPL.

88.     As a direct and proximate result of MPL's fraudulent misconduct, each of the Plaintiffs are further entitled to an award of punitive damages.

### COUNT IV – CONSPIRACY TO DEFRAUD
**(All Plaintiffs against All Defendants)**

89.     Plaintiffs repeat and reallege contained in paragraphs 1 through 88 of this Complaint as if fully rewritten here.

90.     Firman, Moore, and Perez maliciously conspired against Plaintiffs by planning, cooperating, and agreeing to defraud Plaintiffs through their scheme of false representations to

procure the wire transfer of significant funds from each of the Plaintiffs for parts that Defendants knew MPL did not possess, could not readily obtain, and had no intention of providing to the Plaintiffs.

91.     The conspiracy consisted of Firman, Moore, and Perez, collectively and individually, making repeated representations to each of the Plaintiffs that the requested parts were in stock, that they were immediately available, that they would or could be immediately shipped and/or were in transit, and when those representations proved false, that MPL would issue refunds to the Plaintiffs.

92.     Plaintiffs justifiably relied on these representations to their detriment and suffered damages as a result.

93.     Upon information and belief, Firman, Moore, and Perez profited from the above-described conspiracy to defraud Plaintiffs.

94.     As a direct and proximate result of Defendants' misconduct, each of the Plaintiffs have suffered damages in an amount in excess of $50,000 with the exact amount to be proven at trial.

95.     Defendants' above-described conduct was fraudulent, committed intentionally and willfully, and was performed with malice towards the Plaintiffs and displays a pattern of such intentional and malicious conduct designed to induce Plaintiffs (and presumably many others) to remit significant sums of money to MPL.

96.     As a direct and proximate result of MPL's fraudulent misconduct, each of the Plaintiffs are further entitled to an award of punitive damages.

### COUNT V – BREACH OF CONTRACT
**(All Plaintiffs against All Defendants)**

97.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 96 of this Complaint as if fully rewritten here.

98.     Each of the Plaintiffs entered into binding and enforceable contracts with MPL for the purchase and sale of the component parts set forth in their respective invoices.

99.     Each of the Plaintiffs fully and completely performed the terms of their contract.

100.    MPL has failed and refused to perform its obligations under the contracts by delivering the correct parts to the Plaintiffs.

101.    MPL has further failed and refused to provide the Plaintiffs a refund of their money paid despite having breached the terms of the contract.

102.    As a direct and proximate result of MPL's breach of the contracts, each of the Plaintiffs have suffered damages in an amount in excess of $50,000 with the exact amount to be proven at trial.

103.    As a direct and proximate result of Firman, Moore, and Perez's misconduct, each of the Plaintiffs are entitled to pierce the corporate veil of MPL, and are entitled to collect damages from Firman, Moore, and Perez, jointly and severally, for MPL's wrongful and fraudulent breach of contract.

## COUNT VI – UNJUST ENRICHMENT
### (All Plaintiffs against all Defendants)

104.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 103 of this Complaint as if fully rewritten here.

105.    Each of the Plaintiffs have conferred upon Defendants a significant benefit in the form of their payments to MPL for the respective parts and components invoiced.

106.    Defendants knows that they have received a significant benefit from the payments MPL has received from Plaintiffs and have unlawfully retained that benefit.

107.    MPL, however, did not deliver the invoiced parts and components and has refused to refund any of the Plaintiffs for the amounts paid towards those parts and components.

108.     Under these circumstances, it would be unjust for Defendants to retain the significant benefit MPL has received from the Plaintiffs without compensating the Plaintiffs for the loss they have incurred as a result of Defendants' misconduct.

109.     Plaintiffs, therefore, are entitled to be compensated for the value of the benefit they conferred to MPL.

110.     As a direct and proximate result of Firman, Moore, and Perez's misconduct, each of the Plaintiffs are further entitled to pierce the corporate veil of MPL, and are entitled to collect damages from Firman, Moore, and Perez, jointly and severally, for the benefit conferred to MPL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants My Parts Locator, Inc., Michelle Moore (aka Michelle Firman), Cody Moore, and Yvette Perez as follows:

A.  On Counts I and II, that judgment be entered against Defendants Firman, Moore, and Perez, jointly and severally, and Plaintiffs be awarded damages in an amount of three times the damages to Plaintiffs' business and property, plus reasonable attorney fees and expenses as provided by 18 U.S.C. § 1964;

B.  On Counts III and IV, that judgment be entered against Defendants MPL, Firman, Moore, and Perez, jointly and severally, and Plaintiffs be awarded compensatory damages in an amount sufficient to compensate them for the damage sustained as a result of Defendants' fraudulent conduct, and for an award of punitive damages and attorney fees stemming from Defendants' malicious and intentional conduct;

C.  On Counts V and VI, that judgment be entered against Defendants MPL, Firman, Moore, and Perez, jointly and severally, and Plaintiffs be awarded compensatory and consequential damages arising from Defendants' breach of the parties' contracts;

D.  That Plaintiffs be awarded their costs and expenses, including reasonable attorneys fees, incurred in bringing this suit; and

E.  That Plaintiff be awarded any such other and further relief, legal or equitable, as the Court may deem just and proper.

Respectfully Submitted,

BROUSE MCDOWELL, LPA

/s/ Kyle A. Shelton
Kyle A. Shelton (0092083)
388 South Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Fax: (330) 253-8601
kshelton@brouse.com

*Counsel for Ramjet Aviation, Inc., Skyways
Charter, LLC, and HT Aviation Corporation*