## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RAMJET AVIATION, INC., *et al.*, | ) | Case No. 4:22-cv-01245 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| MY PARTS LOCATOR, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

On December 14, 2022, Plaintiffs Ramjet Aviation, Inc., Skyways Charter, LLC, and HT Aviation Corporation moved for default judgment against Defendants My Parts Locator, Inc., Michelle Moore, Cody Moore, and Yvette Perez. (ECF No. 23.) Plaintiffs seek compensatory damages, consequential damages, punitive damages, and court costs on their claims for RICO, fraud, conspiracy to defraud, and breach of contract. (ECF No. 23-1.) For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion and **AWARDS** Plaintiffs a total of $191,505.88 in compensatory damages, $1 each in punitive damages, and $402 total for costs.

## STATEMENT OF FACTS

Plaintiffs Ramjet Aviation, Inc., Skyways Charter, LLC, and HT Aviation Corporation sought to purchase aircraft parts from Defendant My Parts Locator, Inc. (*See* ECF No. 1, ¶¶ 1–3, PageID #2.)

### A.    My Parts Locator

My Parts Locator is an Ohio aircraft parts distributor that claims to specialize in sourcing difficult-to-obtain parts.  (*Id.*, ¶¶ 4 & 12, PageID #2 & #3.)  My Parts Locator advertises that it uses an inventory tracking system that provides its employees with updated information on part availability, condition, and pricing. (*Id.*, ¶ 13, PageID #3.)

My Parts Locator has at least three employees.  (*See id.*, ¶¶ 14–16, PageID #3–-4.)  First, there is Defendant Michelle Moore, a.k.a. Michelle Firman.  Ms. Moore holds herself out as Chief Executive Officer.  (*Id.*, ¶ 14, PageID #3.)  Defendant Cody Moore serves as an officer of My Parts Locator.  (*Id.*, ¶ 15, PageID #4.)  Defendant Yvette Perez  is My Parts Locator's "Part Specialist."  (*Id.*, ¶ 16, PageID #4.)  The complaint alleges that each employee is also a shareholder, officer, or director of My Parts Locator.  (*Id.*, ¶¶ 14–16, PageID #3–4.)

### B.    Orders

Plaintiffs placed three separate orders with My Parts Locator.

### B.1.    HT Aviation

On February 17, 2022, HT Aviation's agent, Gary Peoples, contacted My Parts Locator regarding a Raytheon Aircraft Services Piston Assembly (Part Number 390-820016-011) and a Hawker 200 Outer Cylinder Assembly (Part Number 390-820115-0017).  (*Id.*, ¶ 53, PageID #8.)  In response, Ms. Perez emailed him, copying Ms. Moore, a quote:  $19,676.00 for the piston assembly and $27,819.00 for the cylinder assembly.  (*Id.*, ¶ 54, PageID #9.)  Ms. Perez's email also represented that the parts were "New with 8130" and "Available to ship today."  (*Id.*)  A form 8130 is required for FAA

certification.  (*Id.*, ¶¶ 20 & 39, PageID #4 & #7.)  Satisfied with these terms, Ms. Perez issued an invoice, and HT Aviation wired My Parts Locator $50,844.65.  (*Id.*, ¶¶ 55–-57, PageID #9; ECF No. 1-4, PageID #23.)  That amount covered the price of the parts, taxes, and a wire transfer fee.  (ECF No. 1, ¶¶ 56–57, PageID #9; ECF No. 1-4, PageID #23.)

Roughly a week went by, but HT Aviation still did not have its parts.  (ECF No. 1, ¶ 58, PageID #9.)  Peoples contacted My Parts Locator.  (*Id.*)  This time, Ms. Moore replied and assured Peoples that My Parts Locator was a legitimate company that was only experiencing shipping delays.  (*Id.*, ¶ 59, PageID #9.)  After further delay, Mr. Moore contacted Peoples and HT Aviation's principal and assured them that the shipment was forthcoming and that My Parts Locator was working on obtaining a tracking number.  (*Id.*, ¶ 60, PageID #9.)  When it still did not receive the parts, HT Aviation demanded a refund on March 1, 2022.  (*Id.*, ¶ 61, PageID #9.)  In response, Mr. Moore explained that the parts had a two-week "lead time."  (*Id.*, ¶ 61, PageID #9–10.)

As of December 14, 2022, HT Aviation still did not receive delivery or a refund for the piston assembly, for which it paid a total of $21,078.32.  (ECF No. 23-4, ¶ 8, PageID #161–62.)  Unable to locate substitute parts, HT Aviation purchased a complete replacement unit for $105,000.00.  (*Id.*, ¶ 9, PageID #162 & #171.)  Moreover, HT Aviation's aircraft was not airworthy for 30 days longer than it would otherwise have been if My Parts Locator timely provided the parts.  (*Id.*, ¶ 9, PageID #162.)

### B.2.    Ramjet Aviation

Ramjet Aviation placed an order with My Parts Locator on April 5, 2022. Ramjet Aviation's agent, Jeff Ramsden, spoke with Ms. Perez about purchasing a Hawker 800 R/H Windshield (Part Number NF24016-416).  (ECF No. 1, ¶ 17, PageID #4.)  Ms. Perez quoted him a price of $30,000.00 and represented that the windshield was "Available to ship once payment is received."  (*Id.*, ¶ 18, PageID #4.) In response to a request for confirmation that the part was "physically at [My Parts Locator's] facility ready to ship" and that Ramjet Aviation would receive a form 8130, Ms. Perez sent Ramsden a picture of the part and an invoice.  (*Id.*, ¶ 19–21, PageID #4; ECF No. 1-2, PageID #21.)  The next day, Ramjet Aviation wired My Parts Locator $33,444.00 to cover the windshield, shipping, taxes, and wire fees.  (ECF No. 1, ¶ 23, PageID #5; ECF No. 23-2, ¶ 7, PageID #149.)  Ms. Perez confirmed receipt on April 8, 2022.  (ECF No. 1, ¶ 26, PageID #5.)

Ms. Perez did not provide tracking information until five days later.  (*Id.*, ¶ 28, PageID #5.)  Ramsden reviewed that information and discovered two problems: (1) the shipment weighed much less than the windshield ordered, and (2) My Parts Locator shipped the part via air for $1,500.00 less than it charged for shipping.  (*Id.*) Given these discrepancies, he demanded a refund.  (*Id.*, ¶ 29, PageID #5.)  On April 15, 2022, Ramjet Aviation received the shipment.  (*Id.*, ¶ 30, PageID #5–6.)  As suspected, it was not the windshield it ordered.  (*Id.*)  Instead, it was a windshield bearing Part Number 35-410291-11 and no 8130 paperwork.  (*Id.*)

Again, Ramsden demanded a refund and sought return shipping information. (*Id.*, ¶ 31, PageID #6.)  This time Ms. Perez promised a return of the money, but only

once My Parts Locator received its refund from an unidentified vendor—who she claimed was responsible for the mistake.  (*Id.*, ¶ 32, PageID #6.)  Despite this promise, Ramjet Aviation has not received the $33,444.00 refund.  (ECF No. 23-2, ¶ 14, PageID #151.)  Further, it paid $56,580.88 for a replacement windshield.  (*Id.*, ¶ 15, PageID #151 & #153–54.)

### B.3.  Skyways Charter

Finally, Skyways Charter placed an order from My Parts Locator on April 7, 2022.  Its agent, Rudy Mavila, attempted to order the same windshield as Ramjet Aviation (Part Number NF24016-416).  (ECF No. 1, ¶ 37, PageID #6.)  Ms. Perez emailed him a quote of $34,500.00 and copied Ms. Moore.  (*Id.*, ¶ 38, PageID #7.)  Ms. Perez represented that the part was "Available to ship today" and "New with 8130."  (*Id.*, ¶¶ 38–39, PageID #7.)  After some negotiation, Ms. Perez issued an invoice for $30,000.00, and Skyways Charter wired that amount, incurring a $25.00 wiring fee.  (*Id.*, ¶¶ 41–43, PageID #7; ECF No. 1-3, PageID #22.)  Mavila received the shipping information on April 13, 2022.  (ECF No. 1, ¶ 44, PageID #7.)  Before that, he received a picture of the windshield from Ms. Perez.  (*Id.*)  Skyways Charter ultimately received the wrong windshield, Part Number 35-410291011, which also did not have the proper paperwork.  (*Id.*, ¶ 46, PageID #7.)

Although Ms. Moore promised Mavila that she would fix the issue and provide a refund once My Parts Locator received its refund from an undisclosed vendor (*id.*, ¶ 48, PageID #8), neither promise came to fruition (*id.*, ¶ 49, PageID #8; ECF No. 23--3, ¶ 9, PageID #156).

5

## STATEMENT OF THE CASE

On July 14, 2022, Plaintiffs filed suit against Defendants.  They assert six claims:  (1) RICO under 18 U.S.C. § 1962(c); (2) RICO under 18 U.S.C. § 1962(d); (3) fraud; (4) conspiracy to defraud; (5) breach of contract; and (6) unjust enrichment. (ECF No. 1.)  Counts I and II are asserted only against the individual defendants— Ms. Moore, Mr. Moore, and Ms. Perez.  (*Id.*, ¶¶ 74–88, PageID #11–13.)  Plaintiffs bring Counts III through VI against all defendants.  (*Id.*, ¶¶ 89–110, PageID #13–16.) By October 21, 2022, Plaintiffs served Defendants that complaint.  (ECF No. 10 (Ms. Moore); ECF No. 11 (Mr. Moore); ECF No. 12 (Ms. Perez); ECF No. 17 (My Parts Locator).)  Defendants failed to respond, and on November 30, 2022, the clerk noted Defendants' default.  (ECF No. 22.)  Plaintiffs now move for a default judgment, seeking various damages and reimbursement of court costs.  (ECF No. 23; ECF No. 23-1.)  Defendants did not oppose the motion.

## ANALYSIS

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After entry of default under Rule 55(a), the party seeking relief may apply for a default judgment under Rule 55(b).  Once default is entered, the defaulting party is deemed to have admitted all well-pleaded allegations in the complaint regarding liability, including jurisdictional averments.  *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846

(E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

## I.    Liability

Plaintiffs seek default judgment on all claims except Count VI—unjust enrichment. (ECF No. 23-1, PageID #139.) While the complaint's well-pleaded factual allegations are accepted as true when determining liability, the Court must still determine whether those facts are sufficient to state a claim for relief. *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016).

### I.A.    RICO

In Counts I and II, Plaintiffs allege two violations of the Racketeer Influenced and Corrupt Organizations Act: the first under Section 1962(c) and the second under Section 1962(d). (ECF No. 1, ¶¶ 67–77, PageID #10–12.)

Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Civil liability under that Section requires a plaintiff to plead and prove (1) conduct (2) of an enterprise, (3) engaged in or affecting interstate commerce, (4) through a pattern (5) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "Racketeering activity" requires at least two predicate acts that occurred

within a ten-year period. *H. J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237–-38 (1989).

Section 1962(d) prohibits a person from conspiring to commit a RICO violation. 18 U.S.C. § 1962(d); *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 858 (S.D. Ohio 2020). In addition to the elements for a claim under Section 1962(c), a claim under Section 1962(d) requires a plaintiff to establish "the existence of an illicit agreement to violate the substantive RICO provision." *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983).

Although Plaintiffs sufficiently allege several of these elements, they fail to plead "racketeering activity." In that respect, Plaintiffs allege the predicate acts of mail and wire fraud. (*Id.*, ¶ 72, PageID #11.) To establish mail and wire fraud, Plaintiffs must plead the existence of "(1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005) (citation omitted).

On this record, Plaintiffs have failed to allege that Ms. Moore, Mr. Moore, and Ms. Perez participated in a "scheme to defraud." At bottom, this case involves a business that failed to deliver goods as agreed. RICO does not transform ordinary business disputes, even ones plausibly alleging fraud, into racketeering activity

8

without more.  And more is lacking here.  "[S]imply because [one] party transmitted [money] across state lines" and the other failed to deliver on its promise, a plaintiff does not have a RICO claim.  *Griffin v. Jones*, No. 5:12-cv-00163, 2014 WL 4851785, at *5 (W.D. Ky. Sept. 29, 2014).  Accordingly, the predicate acts on which Plaintiffs rely fail to state RICO claims, and the Court **DENIES** Plaintiffs' motion for default judgment on Counts I and II.

### I.B.   Fraud

Next, Plaintiffs allege two counts of fraud.  (ECF No. 1, ¶¶ 78–96, PageID #12–14.)  Count III alleges fraudulent inducement, while Count IV alleges conspiracy to defraud.  (*Id.*)  Rule 9(b) requires Plaintiffs to plead fraud with particularity.  Fed. R. Civ. P. 9(b).  At minimum, a plaintiff must allege the time, place, and content of the alleged misrepresentation on which it relied; the fraudulent scheme; the fraudulent intent of the defendants; and the resulting injury to the plaintiff.  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993).   Further, with respect to alleged misrepresentations, Rule 9(b) requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent."  *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted).  But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

### I.B.1. Fraudulent Inducement

Fraudulent inducement possesses five elements:  (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact material

to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance on the representation; and (5) injury proximately caused by the reliance. *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (citations omitted).

Accepting Plaintiffs' allegations as true, they sufficiently state a claim for fraud as to Ms. Perez, for which My Parts Locator is vicariously liable. Ms. Perez, acting in the scope of her employment, falsely represented to Plaintiffs that the parts were in stock and ready to be shipped. (ECF No. 1, ¶¶ 18, 38, 54, & 79, PageID #4, #7, #9 & #12.) While Ms. Perez copied Ms. Moore on several of those emails (*see id.*, ¶¶ 38 & 54, PageID #7 & #9), that action alone does not suffice to hold Ms. Moore liable for Ms. Perez's representations. Further, Ms. Perez had knowledge of the falsity of the statements she made but made them anyway to induce Plaintiffs to buy the parts. (*Id.*, ¶¶ 80 & 84, PageID #12 & #13.) Plaintiffs justifiably relied on Ms. Perez's representations and wired My Parts Locator money. (*Id.*, ¶ 85, PageID #13.) Finally, that reliance caused Plaintiffs' injuries because most of the parts never arrived. (*Id.*, ¶ 86, PageID #13.)

To be sure, Plaintiffs allege that many of Defendants' other statements are fraudulent too. (*See id.*, ¶¶ 81 & 82, PageID #12.) For example, Plaintiffs cite Ms. Moore and Mr. Moore's false statements that My Parts Locator intended to ship the parts, would honor its obligations, and intended to provide Plaintiffs a refund. (*Id.*) Although these representations might satisfy the first two elements, the Court is hard-pressed to find reliance. By the time Ms. Moore and Mr. Moore made those

representations, Plaintiffs had already wired payment.  (*See id.*, ¶¶ 48, 59 & 60, PageID #8 & #9.)  Plaintiffs fail to allege that they received anything else of value in reliance on these statements.  Therefore, Plaintiffs fail to state a claim for fraud against Ms. Moore and Mr. Moore, and Plaintiffs are entitled to a default judgment on Count III only against Ms. Perez and My Parts Locator, jointly and severally.

### I.B.2. Conspiracy to Defraud

A civil conspiracy is a "malicious combination of two or more persons to injure another person, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863 (1995) (quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St. 3d 121, 126, 512 N.E.2d 640 (1987)).  To state a claim for civil conspiracy, a plaintiff must allege: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy."  *In re National Century Fin. Enterprises, Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1153 (S.D. Ohio 2009) (citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 292, 629 N.E.2d 28 (Ohio Ct. App. 1993)).

Plaintiffs easily satisfy the first, third, and fourth elements.  The complaint alleges sufficient circumstantial evidence to support an inference that Ms. Moore, Mr. Moore, and Ms. Perez maliciously conspired to defraud Plaintiffs through a scheme of false representations.  (ECF No. 1, ¶¶ 90–91, PageID #13–14.)  Ms. Perez began by inducing Plaintiffs to purchase parts, and the others furthered the scheme with subsequent false representations.  (*Id.*)  Moreover, for the reasons already discussed, Ms. Perez performed an unlawful, independent act that caused an injury.

11

As for the second element, the complaint plainly alleges a conspiracy between two or more persons.  Under the intracorporate conspiracy doctrine, however, "a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991).  In other words, if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Id.*  Since *Bays v. Canty*, 330 F. App'x 594 (6th Cir. 2009), this District has applied the doctrine to conspiracy claims brought under Ohio law.  *See Engle v. City of Cuyahoga Falls*, No. 5:14-cv-1161, 2015 WL 3852143, at *9 (N.D. Ohio June 22, 2015).

Here, Defendants are all part of a single entity, My Parts Locator.  The complaint alleges that Ms. Moore is its CEO, Mr. Moore is an officer, and Ms. Perez is its "Part Specialist." (ECF No. 1, ¶¶ 14–16, PageID #3–4.)  Additionally, Plaintiffs assert that each "is a shareholder, officer, or director of My Parts Locator." (*Id.*)  As a result, Defendants qualify as one person because My Parts Locator can only act through its agents.  Accordingly, Plaintiffs do not state a claim for civil conspiracy, and the Court **DENIES** Plaintiffs' motion for a default judgment on Count IV.

## I.C.  Breach of Contract

### I.C.1. My Parts Locator

Finally, Plaintiffs allege that My Parts Locator breached the parties' contracts when it failed to deliver the agreed-to parts. (ECF No. 1, ¶¶ 97–103, PageID #14–-15.) To establish a claim for breach of contract, a plaintiff must prove:  "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash*

*Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, 104 N.E.3d 1076, ¶ 28 (Ohio Ct. App. 2018)).

Plaintiffs' factual allegations, taken as true, sufficiently allege all of these elements.  From February to April 2022, My Parts Locator executed three contracts to sell Plaintiffs various aircraft parts.  (ECF No. 1, ¶ 98, PageID #15; ECF No. 1-2, PageID #21; ECF No. 1-3, PageID #22; ECF No. 1-4, PageID #23.)  Plaintiffs performed by wiring the purchase price.  (ECF No. 1, ¶¶ 23, 41–43, 55–57, & 99, PageID #5, #7, #9, & #15.)  Conversely, My Parts Locator breached those contracts by failing to deliver the agreed-to parts.  (*Id.*, ¶¶ 30, 46, 63, & 100, PageID #5–6, #7, #10, & #15; ECF No. 23-4, ¶ 8, PageID #161–62.)  And that breach resulted in damages given My Parts Locator's subsequent failures to provide a refund and Plaintiffs' purchase of replacement parts.  (ECF No. 1, ¶¶ 33–34, 49–50, 63–64, & 102, PageID #6, #8, #10, & #15.)  Accordingly, Plaintiffs are entitled to a default judgment on Count V against My Parts Locator.

### I.C.2. The Individual Defendants

Plaintiffs also ask the Court to enter judgment jointly and severally against Ms. Moore, Mr. Moore, and Ms. Perez for breach of the parties' contracts.  (*Id.*, ¶ 103, PageID #15; ECF No. 23-1, PageID #144 & #145.)  To do so, the Court must find that Plaintiffs are entitled to pierce My Parts Locator's corporate veil.  (*See* ECF No. 1, ¶ 103, PageID #15.)  Under Ohio law, the corporate form may be ignored only where "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit

13

fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289, 617 N.E.2d 1075 (1993).

Courts refer to the first prong as the "alter ego doctrine." *Denny v. Breawick, LLC*, 2019-Ohio-2066, 137 N.E.3d 578, ¶ 17 (Ohio Ct. App. 2019) (citation omitted). In assessing whether a corporation is an individual's alter ego, courts consider whether the parties observe corporate formalities, maintain corporate records, commingle corporate and personal funds, and use corporate property for personal purposes. *Id.* (citing *My Father's House No. 1, v. McCardle*, 2013-Ohio-420, ¶ 28, 986 N.E.2d 1081 (Ohio Ct. App. 2013)).

Plaintiffs fail to allege sufficient facts to support a finding in their favor based on the alter ego doctrine. The complaint lacks a single allegation describing the individual defendants' failure to respect the corporate entity. At most, the complaint states that Ms. Moore, Mr. Moore, and Ms. Perez's misconduct entitles Plaintiffs to pierce the corporate veil. (*See* ECF No. 1, ¶ 103, PageID #15.) But that allegation relates solely to prong two. Because Plaintiffs fail to state facts demonstrating that Ms. Moore, Mr. Moore, and Ms. Perez are fundamentally indistinguishable from My Parts Locator, they are not entitled to judgment against those individual defendants.

## II.  Damages

Where a defendant defaults, the well-pleaded allegations of a complaint as to liability are taken as true, but not as to damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d at 846 (citing *Visioneering Constr.*, 661 F.2d at 124); *National Satellite*

*Sports, Inc. v. Mosley Entm't Inc.*, No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) (noting that the allegations of the complaint regarding the amount of damages are not controlling) (citations omitted). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (citing *Vesligaj v. Peterson*, 331 F. App'x. 351, 354–55 (6th Cir. 2009)). The Court may rely on affidavits the plaintiff submits in support of damages without the need for a hearing. *Id.* at *2 (citations omitted).

In this case, Plaintiffs seek compensatory damages, consequential damages, punitive damages, and court costs. (ECF No. 23-1, PageID #143–46.) The Court determines that an evidentiary hearing is unnecessary to address those demands. Plaintiffs' declarations and the accompanying exhibits constitute sufficient evidence from which the Court can determine damages.

### II.A.   Counts I, II, and IV

On Counts I, II, and IV, Plaintiffs request various damages, ranging from $30,025.00 to $378,234.96. (*Id.*, PageID #143–45.) But Plaintiffs are not entitled to judgment on those counts.

15

### II.B.  Count III

Plaintiffs request compensatory and punitive damages for their fraud claim. (*Id.*)  Specifically, Ramjet Aviation, Skyways Charter, and HT Aviation request awards of $89,924.88, $30,025.00, and $126,078.32, respectively, in compensatory damages.  Additionally, all ask for $1 in punitive damages.  (*Id.*)

Claims of fraud and fraudulent inducement can lead to an award of compensatory and punitive damages.  *Simon Prop. Grp., L.P. v. Kill*, 2010-Ohio-1492, ¶ 54 (Ohio Ct. App. 2010) (citing *Curran v. Vincent*, 175 Ohio App. 3d 146, 2007-Ohio-3680, 885 N.E.2d 964, ¶ 20 (Ohio Ct. App. 2007)).  "The measure of damages for fraudulent inducement [is] 'the actual natural losses flowing from the fraud.'"  *Ajibola v. Ohio Med. Career Coll., Ltd.*, 2018-Ohio-4449, 122 N.E.3d 660, ¶ 26 (Ohio Ct. App. 2018) (citations omitted).  However, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss."  *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6 (Ohio Ct. App. 2005).  The doctrine polices the boundary between tort and contract law.  Where the parties have an agreement, the damages contemplated "remain the particular province of the law of contracts."  *Id.* (cleaned up).

In this case, Plaintiffs' fraudulent-inducement claim substantially duplicates their breach-of-contract claim.  Both seek compensatory damages in the same amount.  (ECF No. 23-1, PageID #143–45.)  And Plaintiffs have not identified any basis for such damages other than the economic losses suffered under the parties' contracts.  (*See* ECF No. 23-2; ECF No. 23-3; ECF No. 23-4.)  For these reasons, the economic loss doctrine bars Plaintiffs' recovery their requested compensatory

16

damages on a claim for fraudulent inducement as a matter of law.  Those damages are the province of their breach of contract claim.

### II.C.  Count V

Regarding breach of contract, Plaintiffs request compensatory and consequential damages in the following amounts—Ramjet Aviation:  $89,924.88; Skyways Charter:  $30,025.00; and HT Aviation:  $126,078.32.  (ECF No. 23-1, PageID #144–46.)  Compensatory damages, often called expectation damages, seek to place the injured party in the same position it would have been in but for the breach.  *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 144, 684 N.E.2d 1261 (Ohio Ct. App. 1996).  Where a buyer has paid for but not received purchased goods and purchases a substitute product, courts determine compensatory damages by combining (1) the amount paid and (2) the difference between the cost of the substitute good and the contract price.   Ohio Rev. Code §§ 1302.85(A) & 1302.86(B).  Consequential damages include, among other things, "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise[.]"  Ohio Rev. Code §§ 1302.89(B)(1).

### II.C.1.        Consequential Damages

With these principles in mind, the Court finds that Plaintiffs fail to present sufficient evidence of consequential damages.  At most, Plaintiffs Skyways Charter and HT Aviation allege that they "incurred significant consequential losses due to the delay in restoring [their] aircraft to working condition."  (ECF No. 23-3, ¶ 10, PageID #157; ECF No.  23-4, ¶  9, PageID  #162.)    Those  bare  assertions,

unaccompanied by a description of the revenue lost during such time, provide no insight into the proper amount to award. Even if they did, the record lacks evidence that My Parts Locator had reason to know of Plaintiffs' immediate need for the parts. Therefore, the Court does not award any consequential damages.

### II.C.2.        Compensatory Damages

Plaintiffs are entitled to compensatory damages. Ramjet Aviation and HT Aviation are entitled to a portion of their requested compensatory damages. Meanwhile, Skyways Charter is entitled to the entire amount requested.

### II.C.2.i.        Ramjet Aviation and HT Aviation

Ramjet Aviation has presented sufficient evidence to substantiate damages of $56,480.88. Of that amount, $34,444.00 comes from the price Ramjet Aviation paid for the windshield. (ECF No. 23-2, ¶ 14, PageID #150.) The remaining $22,036.00 represents the difference in the price of Ramjet Aviation's substitute goods and the original contract price. *(See id.*, ¶ 15, PageID #151.)

Similarly, HT Aviation has presented sufficient evidence of $105,000.00 in damages. In its declaration, it states that My Parts Locator has not refunded the $21,078.32 that it paid for the undelivered piston assembly. (ECF No. 23-4, ¶ 8, PageID #161–62.) Moreover, it had to pay an additional $83,921.68 ($105,000.00 total) to procure a complete replacement unit because it could not find the necessary substitute parts from another source. (*See id.*, ¶ 9, PageID #162.)

Ramjet Aviation and HT Aviation request an additional $33,444.00 and $21,078.32 in damages, respectively. If awarded, those amounts would cover *all* of Plaintiffs' expenses in purchasing the parts from My Parts Locator *and* the substitute

18

seller.  But Plaintiffs are not entitled to such a windfall.  They are entitled only to the benefit of the original contract:  for Ramjet Aviation, purchasing the windshield for $33,444.00, and for HT Aviation, purchasing the piston assembly for $21,078.32.  The Court's awarded damages place them in that position.

For these reasons, the Court **AWARDS** Ramjet Aviation $56,480.88 in compensatory damages and HT Aviation $105,000.00 in compensatory damages.

### II.C.2.ii.     Skyways Charter

The Court also finds that Skyways Charter has presented sufficient evidence of $30,025.00 in requested damages.  Skyways Charter's declaration represents that it has not received any portion of the $30,025.00 payment to My Parts Locator for the undelivered windshield.  (ECF No. 23-3, ¶ 9, PageID #156.)  Accordingly, the Court **AWARDS** Skyways Charter compensatory damages of $30,025.00.

## III.    Court Costs

Finally, Plaintiffs request the Court to award them $864 in court costs.  (ECF No. 23-1, PageID #144–46.)  Plaintiffs allege that this amount covers the filing fee ($454) and costs associated with a process server ($410).  (*Id.*, PageID #143.)

Under Rule 54(d)(1), courts have discretion to award costs to prevailing parties.  Fed. R. Civ. P. 54(d)(1); *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012).  Rule 54(d)(1) states, in relevant part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees— should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Section 1920 defines costs for purposes of Rule 54(d)(1).  *Taniguchi*, 566 U.S. at 565 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)).

The Sixth Circuit interprets Rule 54(d) as creating a presumption in favor of awarding costs. *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). This case presents no exception. By virtue of securing a default judgment, Plaintiffs are prevailing parties. *Bootz v. K.I.P., LLC*, No. 15-cv-14196, 2016 WL 2733093, at *1 (E.D. Mich. May 11, 2016). Moreover, they seek covered costs. Section 1920's plain language covers "fees of the clerk" and "[d]ocket fees." 28 U.S.C. § 1920. And the Sixth Circuit has held that a district court may tax costs for private process server fees. *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir. 2002).

Nevertheless, Plaintiffs are only entitled to a portion of their requested costs. As to the filing fee, the docket represents that it was $402, not $454. Further, Plaintiffs have failed to provide any evidence—required in the current procedural posture—of its process server costs. While Plaintiffs suggest in a footnote that counsel will provide a declaration confirming such costs, none is attached. (*See* ECF No. 23-1, PageID #143 n.9.) Accordingly, the Court **AWARDS** Plaintiffs $402 to cover the filing fee.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for default judgment. Specifically, Plaintiffs are entitled to default judgment on Count III against Ms. Perez and My Parts Locator and Count V as to My Parts Locator. On Count III, judgment is entered against Ms. Perez and My Parts Locator jointly and severally. Further, the Court **AWARDS** Plaintiffs

collectively $191,505.88 in compensatory damages, with $56,480.88 to Ramjet Aviation, $30,025.00 to Skyways Charter, and $105,000.00 to HT Aviation.  The Court also **AWARDS** Plaintiffs $402 total for court costs.

     **SO ORDERED.**

Dated:  January 12, 2023

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio